## Baker *et al. versus* Lewis.

If there be any evidence from which arises a fair and legitimate inference of facts, legally sufficient to justify a verdict for the plaintiff, it must be submitted to the jury; otherwise, a judgment of nonsuit may be entered.

It is essential, when such a case is presented for review, that all the testimony adduced on the trial should fully appear of record, and be certified and sent up with it to this court; otherwise, the writ of error will be nonprossed.

The Ohio is not a navigable river in a strict common law sense, but having been declared by statute a public highway for the passage of boats and rafts, the like incidents and consequences attach to it, so far as the ordinary purposes of navigation are concerned.

The mooring of boats and other craft, at well known landings and wharves in the stream, is as well secured and protected by law, as that of actual navigation.

He who moors his craft at an accustomed landing, must be careful to leave sufficient room for the passage of other boats, but the law requires no more of him; and in case of collision with a moving craft, he is not responsible in damages.

The vessel in motion must, if possible, steer clear of, and avoid one moored or at anchor; and in case of injury to the latter by the former, no excuse will avail but unavoidable accident, or that *vis major* which no human skill or precaution can guard against or prevent.

If both parties are in fault, neither can recover damages at law.

By the rules of the maritime law, it is deemed negligence in the moving vessel, in case of collision, that a proper look-out was not kept, especially if the omission may have contributed to the disaster.

ERROR to the District Court of *Allegheny county*.

This was an action on the case by Andrew J. Baker and Alexander McHenry against A. Kirk Lewis, for negligently and unreasonably obstructing the navigable channel of the Ohio river, whereby a boat of the plaintiffs was injured and sunk, and with its cargo became a total loss.

The plaintiffs, on the 13th November 1853, left Pittsburgh with two loaded coal barges, destined for Cincinnati; there being about ten feet water in the channel of the Ohio, caused by a rise from the Allegheny river. When they reached a point opposite the Marine Railway, about a quarter of a mile below the confluence of the Monongahela and Allegheny rivers, they discovered the defendant's barges moored at Snyder's Landing, a short distance below, and extending out into the river a distance of 150 feet; and notwithstanding their efforts to avoid a collision, the plaintiffs'

[Baker *et al. v.* Lewis.]

inside barge struck one of the defendant's boats and immediately sunk. For this the present action was brought.

On the first trial of the cause, there was a verdict for the plaintiffs for $715.06, which was set aside by the court below. The case was tried a second time, and resulted in a verdict in favour of the plaintiffs for $1026.37 ; which was also set aside, and the following opinion delivered by WILLIAMS, J.:—

"The plaintiffs, on the 13th of November 1853, started from Pittsburgh with a pair of loaded coal boats, intending to run them to Cincinnati, but in passing defendant's boats, which were moored at his landing, on the south side of the Ohio river, a short distance below the city, their larboard boat struck one of the defendant's, and was so injured that it sunk, and, with its cargo of coal, became a total loss. This action was brought to recover damages for the injury.

" On the trial two questions arose :

" 1st. Was the loss occasioned by plaintiffs' negligence in running their boats against the defendant's?

" 2d. Did the defendant's boats so obstruct the navigation of the river, as to render him liable for the injury to plaintiffs' boats ?

" 1. The plaintiffs, as shown by their own evidence, were opposite the Marine Railway, some three hundred yards above defendant's landing, when they first saw his boats. Their crew (consisting of the usual number) immediately commenced pulling out from the shore, and, as one of them testifies, did all they could to avoid defendant's boats, and prevent the collision. The plaintiffs' boats were forty or fifty yards from the shore when they first discovered defendant's boats, which extended into the river about one hundred and fifty feet from the shore. The river was then high or rising, there being about ten feet of water in the channel, and the current at that stage, between the Marine Railway and the defendant's landing, was straight with the shore. Below the landing it set out toward the opposite shore. The almost irresistible inference from these facts would seem to be, either that the force on plaintiffs' boats was insufficient for their management, or that it was not properly applied. It can hardly be credited that a crew of competent numbers, strength, and skill, under charge of an experienced pilot, could not, in floating a distance of three hundred yards, throw the plaintiffs' boats beyond the line of defendant's— a distance not exceeding thirty feet in a direct line. But the jury have found that the loss of plaintiffs' boat was not occasioned by want of skill or diligence on the part of the pilot and crew. As this is the second verdict in favour of the plaintiffs, perhaps it ought not to be set aside solely on the ground that, on the question of plaintiffs' negligence, it is against the weight of evidence, as I think it clearly was.

[Baker *et al. v.* Lewis.]

" 2. There is another question more important that this, as it touches the rights of all who navigate the Ohio.   Did the defendant's boats so obstruct the navigation of the river as to render him liable for the injury complained of ?   The right to land and moor is a right incident to, and inseparable from, that of navigation. The defendant was in the exercise of a lawful right, in mooring his boats at his landing, and he is not responsible for the injury, unless he unduly obstructed the navigation of the river.   Did he do so ?   The evidence shows that he was engaged in the coal trade, and had six barges, each twenty feet in width, laden with coal, lying abreast and parallel with the shore, in front of his landing, ready and waiting to be sent off on the rise of the river.   He had also an empty coal-boat, one hundred and thirty, or one hundred and forty feet long, at the upper end of the barges, to protect them from drift wood, &c.   This coal-boat lay quartering from the shore, down the river, and extending lengthwise a few feet farther into the river than the barges.   It was the end of this coal-boat against which the plaintiffs struck.   The river at this point, as shown by the evidence, is at its extreme width, and, at the time of the accident, there was nothing between the defendant's boat and the opposite shore—the main channel of the river being near that shore.   Was the defendant guilty of a nuisance in thus mooring his boats ?   I think there can be no question that he had a clear legal right to moor his boats in front of his landing, in the manner that he did, and that if it had been necessary, he might have extended them a greater distance from the shore, without improperly obstructing the navigation. If, instead of being in the coal trade, he had been the owner of a steamboat, of the largest class, running upon our rivers, might he not lawfully have moored it at his landing, although it might have extended twice the distance of his empty coal-boat ?   But the case of the steamboat, say the plaintiffs' counsel, would be different.   Why so ?   Have steamboat owners greater rights and immunities than the owners of other crafts navigating the Ohio ?   If a steamboat, when moored, extends out two or three hundred feet from the shore, is it to be considered no obstruction to the navigation, when, if a coal-boat extends one-half of that distance, a jury is at liberty to declare it a nuisance, and the owner liable for an injury occasioned by another coal-boat running against it ?   Is there one law for the steamboat, and another for the coal-boat? and does the former belong to a privileged class ?   But, say the counsel, it can be seen farther.   But how does that change the principle ?   Is it any less an obstruction ?   The greater the object the greater the obstruction, and, as one would suppose, the greater the nuisance. In this case, the plaintiffs saw the defendant's boats when they were three hundred yards above them, and might, as one of the crew testified, have seen them when further off, if they had looked.

[Baker *et al. v.* Lewis.]

But the jury have found, as a matter of fact, that defendant's boats were a nuisance; and as this is the second finding in favour of the plaintiffs, the court, it is insisted, ought not to set it aside.

"I am aware of the rule, and disposed to give it full force, that the court will not, except in very extraordinary cases, grant a new trial after two concurring verdicts on matters of fact: 2 *Binn.* 467; 3 *Binn.* 26. But if the evidence requires it, the court may, *and ought*, to grant a third new trial, though the case has been decided uniformly the same way: Wilkie *v.* Roosevelt, 3 *Johns. Cas.* 206. There is no rule of law against granting a new trial, after two concurring verdicts, nor will the court hesitate to do it, if the verdicts are against law: Berks Co. *v.* Ross, 3 *Binn.* 520. The verdict here, as I think, is not only against the evidence, but against the law. The case was first tried before my brother HAMPTON. He set aside the verdict in plaintiffs' favour, on the ground, as I am informed, that the loss, as the weight of evidence fully showed, was occasioned by plaintiffs' negligence. If the evidence on that trial was the same as on the last, I think he was clearly right in setting aside the verdict on that ground; but aside from the reason then given, the verdict must now be set aside on the ground that the defendant, being in the exercise of a clear legal right, is not responsible for the injury occasioned by plaintiffs running their boat against his. The jury, it seems to me, undertook, not only to determine the facts, but the law of the case. If they had found a special verdict, setting forth the facts of the case as they really were, and as proved by plaintiffs' own witnesses, no court would, in my opinion, have entered a judgment thereon, in favour of the plaintiffs. The verdict being against law, cannot, consistently, be permitted to stand. It is, therefore, set side."

On a third trial of the cause, after hearing the plaintiffs' evidence, the court, on motion of the defendant's counsel, entered a judgment of nonsuit, under the Act of 11th March 1836; which was here assigned for error.

*Hamilton* and *Hopkins,* for the plaintiffs in error.—It was held in Rauch *v.* Lloyd, 7 *Casey* 358, that railroad cars unnecessarily left standing across a public highway, are an unlawful obstruction; and why is not a row of coal-boats?

Whether plaintiffs, by reasonable skill and diligence, could have avoided the accident, depends upon the currents and counter-currents of the river at that point, and this is a question of fact which should have been submitted to the jury: Holmes *v.* Watson, 5 *Casey* 459.

*Selden & Burgwin,* for the defendant in error.

[Baker *et al. v.* Lewis.]

The opinion of the court was delivered by

CHURCH, J.—When there is any evidence from which arises a fair and legitimate inference of facts legally sufficient to justify a verdict for plaintiff, it is conceded the court should submit it to the jury; but otherwise a judgment of *nonsuit* may be properly entered. It is therefore manifestly essential, when such a case is presented for review, that all the testimony adduced by plaintiff on the trial, should fully appear of record, and be certified and sent up with it to this court. But we have nothing of the kind, nor anything resembling it, nor any record proceedings whatever exhibited in the paper-book—not even so much as an indication of the sort of action instituted, nor whether there was in reality any issue pending, or any trial, verdict, or judgment in the court below. The defendant has taken advantage of this omission by the plaintiffs, and has notified them of his intention to do so in his paper-book served upon them, and yet there is no correction made nor explanation given or attempted. We cannot, therefore, allow the objection to pass, without observing that there is enough in it alone, under the rules of practice here, to justify a *non pros* of this writ of error : Rules 16 and 17, 6 *Harris* 579. Instead, however, of making such summary disposition of the case, we proceed to consider and to determine the question here assumed to have arisen, and been adjudicated in the court below.

The Ohio is not a navigable river in a strict English common law sense, but having been by the Act of Assembly of the 21st of March 1798, declared a public stream or highway "*for the passage of boats and rafts,*" the like incidents and consequences attach to it, so far at least as the ordinary purposes of navigation are concerned, and should be thus treated in the discussion and decision of the question involved in this cause. The river being therefore a public highway for the direct navigation of boats, is consequently such for all convenient purposes necessarily appertaining thereto. And of these there are perhaps none more particularly essential than the mooring of boats and other craft, at the well-known landings and wharves on the stream. This right is as well secured and protected by law, as that of actual navigation. Indeed, it may be considered as a part and parcel of it, and is only subject to restriction on the principles that govern in the use of all public ways or streets. The enjoyment of one right must not exclude the other. He who moors his craft at an accustomed landing must be careful to leave sufficient room for the passer-by; the laws of navigation require no more of him. On the other hand the vessel in motion must, if possible, steer clear off and avoid the one moored or at anchor : 1 *Conk. Adm. Juris.* 306. And in case of injury to the latter by the former, no excuse will avail but unavoidable accident, or that *vis major* which no human skill or precaution can guard against or prevent : 3 *Hag.*

[Baker *et al. v.* Lewis.]

*Rep.* 169, 173. The law demands of those in charge of moving vessels, constant care and vigilance, to avoid collision with others: 1 *Conk. Adm. Juris.* 298. And if both parties are in fault, neither can recover damages at law.

These are well settled principles, sustained by authority and good sense, and upon a careful review of the alleged facts, will be found peculiarly applicable to the present case, and fully supporting the views entertained by the learned judge before whom this cause was tried: See cases on the subject, 2 *Wh. Dig.,* p. 686–7; Tit. *Shipping,* div. *Collision.*

The material substance of the facts in evidence shows, that the defendant's boats were moored at a well known landing, on the left bank of the river, where the natural channel is on the right, and not extending into the stream more than about one hundred and twenty feet; and at a place where the navigable width of it, at the then stage of water, was nearly two thousand feet, and the same for a distance of at least half a mile above and below, so that the moored boats could have been avoided, the witnesses say, *if taken in time.* And there is no proof that those in charge could not have seen the landing, and the craft there, in time, if a proper *look-out* had been kept up. It is true, there is evidence, that exertions were used to avoid the collision, as soon as the pilot saw defendant's boats, but none, that he kept such look-out as the law requires under circumstances like these, and saw them at the earliest practicable period. By the rules of maritime law, it is deemed negligence in the moving vessel, in case of collision, where it is not shown that a proper look-out was kept up, especially if it be indicated, that the omission to do so may have contributed to the disaster. It does not appear to have been at all necessary for the navigation of plaintiff's boats, to run so close to the left shore at this point; but it was done, so says the witness, *to avoid work.* It is very manifest, therefore, from all these various circumstances proved by the plaintiffs, that in mooring his boats, the defendant was only in the exercise of a lawful right, and did not unlawfully obstruct the navigation of the river; and that the injury sustained by the plaintiffs is not chargeable to him, but resulted from what the law adjudges to be negligence or want of ordinary care and foresight, on the part of those who had the direction in the navigation of their boats. According to the facts proved, and the principles of law already stated, there might have been perhaps propriety in the defendant claiming reparation from the plaintiffs, if his boats had received injury. Without however speculating as to this, we are of opinion the facts proved did not justify a verdict in favour of plaintiffs, and that the court below committed no error in directing a judgment of nonsuit to be entered in this case.

Judgment affirmed.

WOODWARD, J., dissented.