## Thatcher's Administrators *versus* Baker.

In an action of trespass on the case by A., against B., for raising his dam too high and backing up the water in a stream which ran through A's. land to the dam, it appeared that in 1860, the parties met and agreed that the height to which the water could be raised by the dam should be marked by a stake then driven by them. The evidence showed that A. had agreed to permit B. to raise the water two inches above this stake, at least temporarily, and that he never revoked this permission until after 1877, when the dam was carried away by a freshet. When it was rebuilt, A. claimed damages for the raising of the water several inches higher than allowed by the stake of 1860, which had meantime disappeared, *Held*—

(1.) That the court committed no error in directing the jury that they need not consider the height of the water, between 1860, and 1877; but might confine their attention to its height between 1877 and the beginning of this suit.

(2.) That the court was correct in charging the jury that in fixing the water level in 1860, A. and B. did not mean that the water should never rise above that point; but that such point was to be the height of the water under ordinary circumstances, without regard to extraordinary conditions produced by floods and freshets.

(3.) That if the water was caused to flow upon A's. land by some other cause than the act of B., as for example, the removal of an obstruction by A., B. could not be charged with the consequences.

(4.) That there was no error in charging the jury that B. was not required to keep the whole dam at water level. If he provided waste ways enough to carry off the water under ordinary circumstances, that was sufficient. He was not bound to provide in this respect for extraordinary floods.

February 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J. absent.

ERROR to the Court of Common Pleas of *Delaware county :* Of July Term, 1884, No. 73.

Trespass on the case, by Isaac Thatcher against Enos L. Baker to recover for damages alleged to have been suffered by plaintiff, owing to the backing of water in a stream which flowed through plaintiff's land to the defendant's dam. The plaintiff having died during the progress of the suit, his administrators were substituted of record as plaintiffs.

On the trial, the following facts appeared: The lands of the parties adjoined. The defendant had a mill operated by a stream, ordinarily about six feet in width, which ran through the plaintiff's land before reaching the defendant's dam. In 1860 the dam was washed out and rebuilt; and while the water was down the parties met at their property line and drove a stake to mark the height to which the defendant could rightfully raise the water by his dam. It appeared from the evidence that the plaintiff, if not expressly, at least by his

[Thatcher's Admrs. *v.* Baker.]

actions, consented to the water being raised two inches above the top of this stake, until about 1877. The defendant contended that the stake was driven two inches lower than the proper height of the water, in order to preserve it.

In 1877 the dam was again carried away by freshet, and when the water was thus out it was discovered that the stake which had been set up in 1860, had disappeared. Previous to this washout, there had been a crossing over the stream on the defendant's land, formed partly by a little island in the middle of the stream. The defendant claimed that this little island formed a sort of natural dam which to some degree prevented water from backing up on the plaintiff's land, and that without the knowledge or consent of the defendant, the plaintiff had cut a ditch through this island, thus by his own act removing an obstacle which previously interfered with the backing of the water.

The defendant again rebuilt the dam after the freshet of 1877 and provided three waste ways or vents for the surplus water, one six feet in width, and the other two each about ten feet.

On July 27th, 1881, the plaintiff brought this suit claiming that in rebuilding the dam both in 1860 and in 1877 and by various changes made in the backing the defendant had raised the water several inches higher than he had any right to, causing it to back up in the stream where it ran through plaintiff's land.

The defendant submitted, *inter alia*, the following points:

5. "If the jury find that the repairing of the dam in 1877 did not raise the water any higher on the land of the plaintiff than it had been before, but simply caused the water to be backed thereon by reason of washing out or the digging away of the obstruction known as the island, the verdict should be for the defendant." Affirmed. (Fifth assignment of error.)

8. "If the jury find that the island spoken of formed a natural dam or obstruction in the bed of the stream, and that it was either washed out or dug away, and that the defendant's dam did not raise the water any higher than it was before the removal of the island or obstruction, the verdict should be for the defendant." Affirmed. (Sixth assignment of error.)

In the general charge the court instructed the jury, *inter alia,* as follows: "The question therefore will be, was the dam at any time after the washout (in 1877) tampered with, or was anything done by which the water was raised above the level agreed upon in 1860, when the dam was built. (First assignment of error.) . . . . . In fixing the water level the parties did not mean that the water should never rise above that line, but that that was to be the ordinary height of the

water under usual circumstances; a sudden rain, a freshet may raise it an inch or a foot, but that would be no breach of the agreement. (Second assignment of error.) . . . . . If there are sufficient waste-ways to carry off the water in the stream under all ordinary circumstances and at the proper level, that is all that is required. The defendant is not required to keep the whole dam at the water level, if he keeps enough to carry the water off under ordinary circumstances." (Seventh assignment of error.)

Verdict for defendant and judgment thereon; whereupon the plaintiffs took this writ, assigning for error the answers to the defendant's points, and the parts of the general charge, as above set out.

*John M. Broomall*, for plaintiffs in error. The court erred in that part of the charge contained in the second assignment. The jury should have been told that the defendant was bound to provide for all ordinary freshets, all swellings of the stream by spring and fall rains, by keeping his breast-work down, or by widening the over-fall or both; that only an extraordinary flood will excuse him in backing the water upon his neighbor: McCoy *v.* Danley, 8 Harris, 85. By affirming defendant's fifth point the court assumed that the only complaint that the plaintiff had was the repairing of the dam in 1877. Grant that the repairing of the dam in 1877 did the plaintiff no damage whatever, it does not follow that the dam was not too high before and after that event. The suit covers twenty years of time and the evidence relates to nearly the whole of it. It is very strange law that the plaintiff cannot recover for an injury in 1876 or in 1878 merely because no damage was done him in 1877.

*V. Gilpin Robinson*, for defendant in error.—The testimony shows that from the building of the dam about 1860 to 1877, there was no complaint made by the plaintiff of the water being backed up on him. He then complained that the dam had been rebuilt too high. He, himself therefore confined the issue to the period between 1877 and the beginning of the suit. The case of McCoy *v.* Danley, 8 Harris, 85, cited by the plaintiff in error, is not in point; because there, no agreement had been made fixing the water mark.

Mr. Justice GORDON delivered the opinion of the court, March 30th, 1885.

After a careful examination of the charge of the learned judge who presided at the trial of this case in the court below, the points of the counsel, and the evidence, we fail to discover

any error that requires correction. When the dam of 1860 was built the parties fixed the water level by a stake driven into the bed of the stream, to the top of which the defendant was, according to the history of the case as given by the counsel for the plaintiffs, in his paper book, authorized to raise the water. Nor in this has he admitted more than he was warranted in doing. for his client, the decedent, in his evidence before the board of arbitrators, admitted such to be the fact. He then also said that at that time the defendant did not claim any right to flood his, Thatcher's, ground, but thought that he had raised the water since the dam was built, two or three inches. He further testified, that in 1860 he agreed that Baker "might raise it two inches, but not permanently." If this means anything it means that the water might be raised two inches above the top of the stake, for as the stake was to be, as is conceded, a permanent mark, the temporary allowance of two inches must have been in addition to this measure. Taking. then, this statement as a true history of the case, and the court was undoubtedly right in calling the attention of the jury to the fact that they need consider nothing back of the washout of 1877, for back of that there was nothing to consider. The parties had fixed the water line at the height of the stake and two inches over, and although the latter may have been merely permissive and not a permanent arrangement, yet as this permission was not revoked until 1877, if at all, Baker could not be treated as a trespasser in the continuance of the use of the additional two inches of head. It was, therefore, entirely proper for the court to confine the attention of the jury to what occurred subsequently to the washout of that year. Nor was the court wrong in charging that in fixing the water level the parties did not mean that the water should never rise above that line, but that that was to be the height of the water under ordinary circumstances. That this was a proper interpretation of the action of the contestants we have no doubt. There certainly could have been nothing else settled by such an arrangement. The parties well knew that in time of a flood their mark would be covered by the water, but just how much of this effect would be caused by the freshet, and how much by the dam could not be anticipated, for much must depend upon the character of each and every rise. The effect of the dam would, of course, be much greater in a light than in a heavy freshet, and that effect must necessarily vary from the highest rise to the lowest. We must, therefore, take it that the parties intended to settle the line with reference to the ordinary condition of the creek, having no regard to those extraordinary conditions the effects of which they could not

calculate.    The third assignment is passed as containing nothing of material importance, and as the fourth sets out the point complained of without the answer, it cannot be considered.    The affirmance of the defendant's fifth and sixth points is unexceptionable, for if the water was caused to flow upon the plaintiff's land by some other cause than the act of the defendant, he cannot be charged with the consequences.

Neither can the seventh assignment be sustained; in view of the facts of this case the court was right in saying that the defendant was not required to keep the whole dam at the water level if there were waste ways enough to carry off the water under all ordinary circumstances.   He was certainly not bound to provide for extraordinary circumstances; for unusual floods which would at all events sweep over the whole breast of the dam.    This is exactly what was ruled in Bell *v.* McClintock, 9 Watts 119; and in McCoy *v.* Danley, 8 Har., 85.   The court below was reversed principally for its definition of what it called an ordinary stage of water, as that condition in which it remains longest, excluding the dry season.    In this case, Mr. Chief Justice BLACK cites with approval Bell *v.* McClintock, in which it was held that one who erects a dam is responsible only for injuries caused by it in times of usual, ordinary and expected freshets, and not for those resulting from a flood, which, as the Chief Justice remarks, " when it does come, is a visitation of Providence, and the destruction it brings with it must be borne by those on whom it happens to fall."   Besides this, however, the court might safely have said to the jury, that the waste ways were sufficient, and more than sufficient to vent all the water that might be expected in this stream.   Here was a little creek, about six feet in width, and to vent this little stream there were no less than three water ways, one of six feet in width, and the other two of ten feet each, the smallest of which if we are to believe the evidence, was sufficient to pass all the water of the stream in ordinary stages.   Now how it can be that this mere brook, pouring into the head of a wide pond, should require at its outlet from that pond more than four times its own width for its discharge, is more than we can understand.    Nor is it to be forgotten that in times of freshets the whole breast of the dam, some forty-eight or fifty feet, was available as an outlet for the water.    On the whole we think the plaintiffs received nothing at the hands of the court of which they can justly complain.   The case was well and carefully tried, and one of the last directions which the court gave to the jury was, that if the defendant had raised the water even the fraction of an inch above the line of 1860, the plaintiffs were entitled to their verdict. This was certainly all they

had a right to expect, and as the jury have found that the defendant did not so raise the water, they have that body, not the court, to charge with the result.

The judgment is affirmed.