# Manderbach *versus* Bethany Orphans' Home.

A., who was seised of a tract of land upon which there was a spring of water, conveyed to a railroad company a perpetual right to use such water for the purposes of the road and for this purpose to lay a pipe across his land.   The railroad company laid the pipe across B.'s land, which adjoined A.'s and across A.'s land to the spring.   A. subsequently conveyed to B. his heirs and assigns a perpetual right to tap the railroad pipe and use the water flowing therein for his buildings, B. to pay A. annually $5 for each building using the water.   A. died intestate and his administrator conveyed the land to C.   The deed contained no special reservation of the above water rights but contained the usual grant of "waters, water courses, rights, liberties, privileges, hereditaments and appurtenances thereunto belonging and the reversions, remainders, rents, issues and profits thereof," &c.   C. by a similar deed conveyed a portion of said land, which portion contained the spring of water, to D.   The railroad pipes ran in part across the remaining portion of the land, which C. did not convey.

*Held,* that the yearly compensation which B. made for the use of the water was a rent and the right thereto passed by the conveyances to D.

March 5th, 1885.   Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, and CLARK JJ. GREEN J., absent.

ERROR to the Court of Common Pleas of *Berks county:*
Of January Term 1885, No. 395.

This was a case stated, wherein the Bethany Orphans'
Home was plaintiff and Henry H. Manderbach defendant.

The following facts were stated in the nature of a special
verdict for the opinion of the court:   On August 11th, 1856,
John Manderbach, who was seised of a tract of land in Berks
county containing about sixty-nine acres, sold and conveyed
to the Lebanon Valley Railroad Company, and their success-
ors, the right and privilege to enter in or upon his land afore-
said, and lay a pipe from any point on the railroad, either on
the property of the said railroad company or on the property
of the said John Sheetz, to a certain spring on the said land
of Manderbach or to some point in the outlet thereof, and
conduct the water of the spring to the railroad.   In 1859,
Manderbach by deed duly executed and acknowledged, granted
and conveyed " unto the said John Sheetz, and to his heirs and
assigns, out of the pipes which the water is now conveyed
from the said spring to said Womelsdorf Railroad Station, a
perpetual water right, to attach a two-inch water pipe to the
said pipes, to convey the water through the said two-inch
pipes to the dwelling house or houses now built, or which
may be hereafter built, by himself, his heirs, or assigns, to
attach hydrants to said water pipes laid by the said John
Sheetz, to convey water to any dwelling house or houses now
built or which may hereafter be built on the premises of the
said John Sheetz.   A perpetual water right, as aforesaid, to
be at the expense of the said John Sheetz, his heirs or assigns.
In consideration whereof, the said John Sheetz, for himself,
his heirs, executors, administrators and assigns, doth covenant,
promise and agree to and with the said John Manderbach, his
heirs and assigns, by these presents, that he, the said John
Sheetz, his heirs, executors, administrators and assigns, shall
and will pay the sum of five dollars annually for each and
every dwelling house or houses, now built or which may be
built hereafter, as aforesaid, to which the water may be con-
veyed to such house or houses through a hydrant or sub-
hydrant out of said water pipes perpetual, as aforesaid.   And
for the true performance of all and every the covenants and
agreements, aforesaid, each of the said parties binds himself,
his heirs, executors, administrators and assigns in the penalty
of fifty dollars lawful money of Pennsylvania firmly by these
presents."

John Sheetz upon the execution of this deed made the
attachment, and he and his assigns have since used the water

in conformity therewith.   John Manderbach died intestate in 1863, seised of the aforesaid tract of land.   His administrator conveyed the said land to David Manderbach, who conveyed it to Henry H. Manderbach, the defendant.   The administrator's deed to David Manderbach, conveyed the aforesaid "sixty-nine acres and twenty-eight perches, strict measure, together with all and singular the houses, out-houses, buildings, ways, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever thereunto belonging, or in anywise appertaining, and the reversions, remainders, rents, issues and profits thereof, and also all the right, title, interest, property, claim and demand whatever of the said John Manderbach, in his lifetime, at and immediately before the time of his decease, in law, equity or otherwise howsoever, of, in and to, or out of the same." The deed from David Manderbach to Henry H. Manderbach, conveyed the same sixty-nine acres and twenty-eight perches, together with the "ways, waters, water-courses, rents, issues and profits," &c., as above fully recited.

In 1867, Henry H. Manderbach by deed conveyed to the Bethany Orphans' Home the plaintiff, 29 acres of the aforesaid tract of land.   The deed for this portion, which contained the spring of water, contained the usual grant of "waters, water-courses, reversions, remainders, rents, issues, and profits" &c.   By a subsequent deed, defendant conveyed to plaintiff the remaining portion of the original tract of 69 acres, except a lot of about three acres, over which the pipe of the railroad company crosses.

The question submitted for the determination of the court was whether the said Bethany Orphans' Home, the plaintiff, is entitled to the five dollars annually due from the said John Sheetz, his heirs and assigns, for each dwelling house to which the water from said spring is conveyed, or not.

The court below (HAGENMAN, P. J.,) entered judgment for the plaintiff.   The defendant thereupon took this writ of error, assigning for error the entry of the judgment for the plaintiff.

*William H. Livingood,* for the plaintiff in error.—Manderbach granted to Sheetz only the water in the pipes of the railroad company.   The right to use the water he had already granted for a valuable consideration to the railroad company. To it therefore belonged both the pipe and the easement.   In conveying the water, the soil will not pass.   Hence this covenant with Sheetz does not attach to the land itself and does not run with the title : Greenleaf's Cruise IV., p. 268; Spencer's 1 Smith's Lead. Cases, 133; Dark *v.* Johnston, 5 P. F. S.,

164. Granting that the right in Sheetz was an easement, it was therefore indivisible. As the defendant is still seised of a portion of the original tract, the right to the compensation necessarily inheres in him.

*Geo. F. Baer* (with him *Jeff. Snyder*), for defendant in error.—Cited Boyd *v.* McCombs, 4 Pa. St., 147; Tabor *v.* Bradley, 18 N. Y., 111.

Mr. Justice GORDON delivered the opinion of the Court, October 5th, 1885.

On the 11th of August, 1856, John Manderbach sold to the Lebanon Valley Railroad Company a perpetual right, for the use of the railroad only, to take water from a spring on his land, and for that purpose to lay a three-inch pipe from the railroad to said spring, either on the property of the grantor, or on that of John Sheetz, an adjoining land owner. Afterwards, on the 1st of September, 1859, Manderbach granted to Sheetz the right to use the water from said spring by attaching, on his own land, a two-inch pipe to the railroad company's pipe, and for this privilege he agreed to pay the sum of five dollars a year for each house that he might thus supply with water.

John Manderbach died intestate; the defendant below was appointed administrator of his estate, and he, said defendant, afterwards by purchase became possessed of the land upon which the spring above mentioned was situated, and in turn sold it to the Bethany Orphans' Home. As there were in this conveyance no reservations except such as related to a water right distinct from the rights above stated, the grantee, of course, took not only the land but all the appurtenances not reserved. But as rent issues out of land it is incident to the reversion, and the right to demand it necessarily attaches to the ownership. Hence, in Streaper *v.* Fisher, 1 Rawle, 154, a sheriff's sale of a lot of ground was held to pass also a rent charge. It is urged, however, that this is not in the nature of a rent, but is rather a personal right belonging to the estate of the grantor. But, in answer to this, it may well be contended that the covenant to supply Sheetz's pipe was undoubtedly one running with the land; by it the land was made perpetually servient to this right, and the plaintiff took it subject to the burthen thus imposed upon it by the grantor. Nor do I see how the fact that the Sheetz pipe tapped that of the railroad company on lands not of said grantor can make any difference. The water nevertheless comes from the Manderbach property, and for a disturbance of it such as would interfere with Sheetz's rights an action would lie. Thus the

[Appeal of Merkel et al., Administrators.]

servitude upon the land continues as it was when first created, and whether Sheetz was to be supplied with water through his own pipes or those of the railroad company can made no difference.

Indeed, the right of Sheetz to use the railroad pipes makes them, so far as the use intended is concerned, as much his own as though he had laid them in place. Should the company abandon them, Sheetz is still entitled to their use, and he may at any time enter upon the servient land for the purpose of repairing or relaying the pipes. All this follows as incident to his grant, and his rights cannot be destroyed either by the neglect or abandonment of the railroad company.

Here then, is a right charged upon the land of the plaintiff; a right to which his land is servient, and in consideration of which Sheetz is obliged to pay an annual compensation.

This compensation is, therefore, a profit issuing yearly out of lands; a rent, reditus to the landlord for their annual use, and as such it passed by the conveyance of H. H. Manderbach to the plaintiff.

The judgment is affirmed.