## McMinn *v.* Pittsb. etc. R. Co. et. al., Appellants.

*Railroads—Release of right of way—Subsequent negligence.*

A release of the right of way to a railroad company, together with all damages " now incurred, or hereafter to accrue, for or by reason of the location, construction, maintenance and operation " of the railroad, does not cover injuries resulting from subsequent negligence of the company in failing to make or maintain proper and sufficient drains or culverts: Hoffeditz v. Railway Co., 129 Pa. 264; Updegrove v. Railroad Co., 132 Pa. 540, distinguished.

Argued November 4, 1891.    Appeal, No. 278, Oct. T. 1891, by defendants from judgment of C. P. No. 2, Allegheny Co., July T., 1890, No. 352, on verdict for plaintiff.    Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Trespass by Mary McMinn against the Pittsburgh, McKeesport & Youghiogheny Railroad Company, to recover damages for the flooding of certain premises owned by the plaintiff, in consequence of negligence in the construction, maintenance and operation of the Pittsburgh, McKeesport & Youghiogheny railroad.

The plaintiff's statement of claim averred that, in 1882, the first-named defendant negligently constructed its railroad in such a manner as to obstruct and dam up, by a fill or embankment, a natural stream of water, and cause the water of said stream, and surface and rain water falling near the plaintiff's premises, to flow upon said premises; that on January 1, 1884,

said company leased its railroad to the Pittsburgh & Lake Erie
Railroad Co., which thereafter operated said road ; and from
the date of said lease, the defendants unlawfully maintained
said railroad, neglecting and refusing to construct a sufficient
culvert or drain for the escape of the water of said stream, in
its usual channel, from the plaintiff's premises and across and
below said railroad.   Issue.

At the trial on April 21, 1891, testimony given for the plaint-
iff tended to show that, while the Pittsburgh, McKeesport &
Youghiogheny Railroad Co., when constructing its railroad,
put in two tile drains for the purpose of passing the water of
the said stream through the embankment mentioned in the
statement, these were inadequate and insufficient for that pur-
pose.   Testimony was given tending to show also, that, subse-
quent to the date of the lease aforesaid, two box drains which
had been placed under the track to carry surface water across
the railroad, at points some distance from plaintiff's property,
were allowed to become obstructed ; and in consequence there-
of the surface water, which otherwise would have passed
through them, ran along the side of the railroad, and that a
ditch dug along the railroad in front of the plaintiff's property,
carried this water to the place where the stream was obstructed,
thus adding to the volume of water accumulated and thrown
upon the plaintiff's premises by the embankment.   The latter
testimony was received without objection, either as to the suf-
ficiency of the statement of claim to justify its admission, or
as to the joint responsibility of the defendant companies for
the matters shown thereby.[*]

At the close of her case in chief, the plaintiff by leave of the
court and against the objection of the defendant, amended the
statement of claim by adding averments corresponding with
the proof made respecting the said box drain and the ditch.

It appearing that the plaintiff's lot had originally been a part
of a tract of land that, at the time of the location and construc-
tion of the said railroad, was owned by James Douglass, who
conveyed said lot to the plaintiff on June 17, 1884, the defend-

---

[*] The lease of the railroad was not printed in the paper books.   It was
claimed in the argument for the appellee that, under its provisions, the
lessor and lessee had joint control of the maintenance of the railroad.

ants put in evidence a right-of-way deed from James Douglass and wife to the Pittsburgh, McKeesport & Youghiogheny Railroad Co., dated September 29, 1882, containing the following clause:

" And the said parties of the first part, for the consideration aforesaid, do for themselves, their heirs, executors, administrators and assigns, hereby release and forever quit-claim and discharge the said second party, and its successors and assigns, from all damages or injuries of any kind, now incurred or hereafter to accrue, for or by reason of the location, construction, maintenance, and operation of the said railroad of two or more tracks, with its appurtenances, through, upon and over and under said described land."

As is stated in the charge of the court below, infra, the testimony did not show clearly whether this release was given before or after the tile drains had been put in under the railroad embankment.

The testimony being closed, the court, EWING, P. J., charged the jury in part as follows:

The court is requested by the defendant to charge:

1. That under all the testimony in these cases the verdict must be for the defendants, in both cases.*

Answer: This point is refused.  There are questions of fact for the jury. [1]

Now, these plaintiffs having bought from Mr. Douglass cannot recover any damages for the right of way, or for the construction and operation of this road in any reasonable manner, in any way that is not clearly negligence in maintaining their road, or in running trains.  Counsel for defendants have asked us to say, on the strength of the case of Updegrove v. Railroad Co., 132 Pa. 540, that the plaintiffs cannot recover in these cases, because their grantor released damages for the right of way, construction and maintenance of this road; and we repeat that this is true, in regard to any proper, reasonable construction, maintenance or operation of the road.

[We understand that this is a release of the right of way, to

---

* The case which is the subject of this report, and another one in which Samuel McMinn was plaintiff, claiming damages for like injuries to a property purchased by him from James Douglass in 1887, were on trial together.

give the railroad substantially the same rights and privileges as they would have if the parties had not agreed as to the damages for the right of way. The company had filed a bond, and damages had been assessed.] [2] The damages would include everything that would properly be construed, or in contemplation of the parties, as a reasonable exercise of their right in constructing and maintaining their road, and the exercise of the judgment of the proper officers of the road in relation thereto. But it would not include, nor would it be submitted to find damages in such a case for, anticipated negligence, clear negligence on the part of the company at some future time, in carelessly maintaining their road, neglecting the ordinary and apparent and palpable things that were necessary for the protection of the road, or reasonable protection of the property, no more than it would include supposed or possible negligence in the running of the trains. As, for instance, damages would not include in such a case the possibility that the railroad company might fail to use spark arresters, and set on fire property near the road.

Now, if this road was constructed with these pipes in there, that, according to the evidence, are palpably insufficient to carry off the water of ordinary heavy rains, or if it was understood that they would be put in there, at the time that Mr. Douglass executed his release, then the plaintiffs cannot recover by reason of the insufficiency of those pipes to carry off the water that naturally and ordinarily would come down that valley. There is a question of fact for the jury. It is claimed by the plaintiffs that they were not there, and were not in contemplation. It is claimed by the defendants that they were. The evidence does not show clearly. There was some work done on this land, but when this was done we do not know. The only positive evidence about it as to time, is that some time before that, the contractor for the bridge and stonework along there had hauled stone for the building of a culvert, and those stone, it is said, are lying there to this day. Why these insufficient pipes were put in nobody explains, except that the contractor, Mr. McPherson, says that stone of the proper quality were a little hard to get, were a little scarce along there. If these culverts, or these drain pipes, were put in at that point by the exercise of a discretion of the proper officers

that they were sufficient, then the plaintiffs would have to abide by that decision.   We have no evidence, I have said, as to how they came to be put there, in place of the stone culvert that appears to have been at one time intended. . . .

The learned counsel for the defendants has argued in your presence that the railroad company would have had a right to to build this embankment, under this release, and put in no culvert whatever.   We do not agree with that at all.   And not only could they not have done that, and dammed up water there, but on application the court would have found some way to prohibit them from doing such an act.   It would be a gross wrong both to the private property owner and a wrong to the public.

The plaintiffs do not rest on that alone.   It seems there was not a large amount of trouble the first three or four years. The witnesses say there were dry seasons; latterly we have had wet seasons.   But it is alleged by the plaintiffs that some years after the construction of this road, the defendant companies allowed the box drains across their road in this vicinity, above somewhere, to be clogged up so that they did not carry the water that came down through ravines, or depressions, and have made a drain that carries the water down near this property, perhaps on to a portion of it making a pond, and on and into this ravine, thus increasing the flow of water at this place without any adequate increase of the capacity of the sewers. That will be for you to say, but there is no evidence that I recall to the contrary, that these drains are insufficient to carry off the accumulated water.   Now, that, I do not think, is in contemplation of the release of the right of way.   When they throw an amount of water into a place different from what it was when they constructed the road, and had in contemplation when they built it, they ought to make some increased provision for the carrying off of that water. . . . . .

Now, if you find for the plaintiffs, you have to find clear negligence on the part of the defendants, in their manner of maintaining their railroad and conducting this water, during the time that these plaintiffs have owned their property.   Unless you do, your verdict must be for the defendants. . . . .   Bear in mind that neither of these parties can recover for anything that occurred prior to their purchase.   It must be for negligence

in the maintenance of the roadbed since they owned the property, that they can recover for, and for that alone; and, unless from the evidence you find affirmatively that there is clear and evident negligence in the manner of taking care of their drains and property, your verdict will be for the defendants. If you find the other way, then you find for the plaintiffs the damages which they have suffered.

Verdict and judgment for plaintiff, for $300. Defendants appealed.

*Errors assigned* were [1] the refusal of defendants' point, and [2] the part of the charge embraced in brackets.

*Edwin W. Smith, P. C. Knox* with him, for the appellants, cited: (1) As to joint liability of the defendants: Bard v. Yohn, 26 Pa. 482; Little Schuylkill Nav. Co. v. Richards, 57 Pa. 142; Seely v. Alden, 61 Pa. 302. (2) As to the effect of the right-of-way release: Updegrove v. Railroad Co., 132 Pa. 540; Hoffeditz v. Railway Co., 129 Pa. 264.

*William Yost,* for the appellee, cited: Cooley on Torts, 609, 612, 613; Klauder v. McGrath, 35 Pa. 128; Smith v. Elliott, 9 Pa. 345; Irvine v. Wood, 51 N. Y. 224.

PER CURIAM, January 4, 1892.

The plaintiff's predecessor in title had released the right of way to the defendant company by a deed which contained the following clause:

"And the said parties of the first part, for the consideration aforesaid, do for themselves, their heirs, executors, administrators and assigns, hereby release and forever quit-claim and discharge the said second party, and its successors and assigns, from all damages or injuries of any kind, now incurred or hereafter to accrue, for or by reason of the location, construction, maintenance, and operation of the said railroad of two or more tracks, with its appurtenances, through, upon, and over and under said described land."

If the injury of which the plaintiff complains was the necessary result of the construction and maintenance of the road, it would be covered by the release and she could not recover. But the action was brought to recover damages for the negligence of the company in the construction of its road; the allegation being that the drain was insufficient to carry off the

water, and also that the company allowed said drain to be obstructed so that the water would not flow through it. It needs no argument to show that a release of the right of way to a railroad company, does not cover injuries resulting from the negligence of the company either in the construction, maintenance, or operation of the road. The cases of Hoffeditz v. Railway Co., 129 Pa. 264, and Updegrove v. Railroad Co., 132 Pa. 540, do not help the appellant. In the one first cited, the drain complained of was constructed prior to the execution of the release; and in the other, the claim for damages was made by a property owner on the lower side of the railroad embankment, on account of the surface water having been collected and thrown from the culvert upon his land below. We there said: " These ditches, and this culvert, and this discharge of water are the result, the necessary result, of the construction of the road."

Such is not the case here. If the culvert had been properly constructed and kept open, the injury of which the plaintiff complains would not have occurred. The property owner who releases the right of way does not subject himself to any peril caused by the negligence of the company.

Judgment affirmed.                                         C.