# Brush et ux., Appellants, v. Lehigh Valley Coal Co.

*Mines and mining—Deposit of coal dirt in a stream—Release of liability—Negligent acts—Covenant running with land—Public policy—Navigable rivers—Act of Congress of March 3, 1899.*

1. Owners of land may, for a valuable consideration, grant and convey to a coal mining company the right to deposit coal dirt in a stream and release such company for injury from refuse necessarily discharged into the stream.

2. Such a release is the grant of an easement or estate in the land and when recorded is binding upon the grantors' grantees, though the words "heirs and assigns" do not appear in the release after the names of the grantors. The covenant is not personal but runs with the land.

3. A release of such character will cover all the matters which can fairly be said to have been within the contemplation of the parties when the release was executed, but will not discharge from responsibility for subsequent negligent acts which could not have been foreseen.

4. It cannot be considered an effort to limit liability for negligence and therefore ineffective on the ground of public policy.

5. It is not material to its validity that the property of the coal company was not contiguous to that of the releasor.

6. Nor can it be alleged that such release authorized the commission of acts creating nuisances, harmful not only to the owner but also to the public at large, and therefore void.

7. There is no reason why an individual cannot surrender his individual claim, or grant the right to do an act which otherwise would constitute a trespass as to him, if he so desires.

8. In a suit aganst the coal company, when the latter sets up the release as a defense, plaintiff cannot maintain that as the coal dirt was deposited in a stream which flowed into a navigable river, the release was void under the Act of Congress of March 3, 1899, U. S. Stat. An., section 9918, if there is no evidence whatever that the river was navigable at the point where the stream entered it, or that navigation was obstructed by the deposit.

9. The purpose of the Act of Congress was to prevent actual interference with navigation.

10. The courts will not ordinarily take judicial ntice that a river is navigable at a particular point, although the river has been declared navigable by statute.

Argued May 10, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ.

Appeal, No. 124, Jan. T., 1927, by plaintiffs, from judgment of C. P. Northumberland Co., Sept. T., 1921, No. 453, on verdict for plaintiff, in case of Joseph Brush et ux. v. Lehigh Valley Coal Co.   Affirmed.

Trespass for depositing coal dirt in stream.   Before LLOYD, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $2,514.   Plaintiffs appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*G. H. Gerber,* with him *A. D. Knittle* and *Joseph S. Hollister,* for appellants.—The grant or release is void as against public policy, and is illegal because it provides for the commission of acts which are directly forbidden by statute as well as acts which are a private as well as public nuisance at common law.

The Susquehanna is a navigable river of the United States, and the courts take judicial notice of this fact: Carson v. Blazer, 2 Binn. 475; Wainwright v. McCullough, 63 Pa. 66; Craig v. Kline, 65 Pa. 399; Shrunk v. Nav. Co., 14 S. & R. 71.

The deposit of dirt or refuse matter in any navigable river and tributaries of the United States is forbidden by the Act of Congress.

The deposit of coal dirt in Shamokin Creek by defendant is a public nuisance at common law: Nav. Co. v. Richards, 57 Pa. 142; Seeley v. Alden, 61 Pa. 302; Gallagher v. Kemmerer, 144 Pa. 509; Walters v. McElroy, 151 Pa. 549; McCallum v. Water Co., 54 Pa. 40; Fricke v. Quinn, 188 Pa. 474; Keppel v. C. & N. Co., 200 Pa. 649.

Contracts or covenants which are entered into for the express purpose of carrying into effect that which is prohibited by the common or statute law are void.

The right of a riparian owner is qualified by the rights of lower riparian owners: Glass v. Water Co., 5 Pa. Superior Ct. 563.

Independent of all other considerations, the release does not create any estate or rights in the parties of the second part which is binding on the lands of plaintiffs who are the grantees of the parties of the first part to the release: Big Mountain Imp. Co.'s App., 54 Pa. 361; Schmoele v. Betz, 212 Pa. 32; Tinicum Fishing Co. v. Carter, 61 Pa. 21; Gibbs v. Sweet, 20 Pa. Superior Ct. 275.

The release does not give any rights in the land of plaintiffs to the parties of the second part or to their lands; the grant is as to Shamokin Creek.

*Voris Auten,* with him *Edward J. Flynn,* for appellee.—The record of a deed or mortgage is notice to those who are bound to search for it: Coleman v. Reynolds, 181 Pa. 317.

The deed of release was duly executed with full knowledge of the surroundings. Doubtless when the releasor sold the lands in question he deducted from the purchase price the value of the servitude thus annexed to it by virtue of the release: Penn. Coal Co. v. Sanderson, 113 Pa. 126.

A release, in Pennsylvania, need not be in technical form; it is sufficient if it be in substance a release. Words of inheritance are not necessary in a release of dower: Gray v. McCune, 23 Pa. 447; Kellert v. Coal & Iron Co., 226 Pa. 27.

Creeks and small rivers which have been granted by warrant and survey, are private property: Barclay R. R. & Coal Co. v. Ingham, 36 Pa. 194; Flanagan v. Phila., 42 Pa. 219; Gilchrist's App., 109 Pa. 600; Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605.

The shores of navigable waters and solids under them were not granted by the Constitution of the United States, but were reserved to the states, respectively; as to lands bounded on navigable waters the United States assumes the position of a private owner, subject to the general law of the state so far as its conveyances are concerned.

OPINION BY MR. JUSTICE SADLER, June 25, 1927:

Brush and wife, plaintiffs, are owners of a lot with buildings erected thereon, located on lowlands, approximately one hundred feet north of Water Street, in the Borough of Mount Carmel. Along the south side of the highway referred to runs Shamokin Creek, which rises some miles to the east, and ultimately enters the Susquehanna River at Sunbury. The Lehigh Valley Coal Company, defendant, owns a colliery on land adjoining the stream at a point one mile above the town, and, as a result of its operations, the water becomes permeated with coal dirt and other refuse. Prior to 1919, this waste matter was frequently washed, in time of flood, over the land to the north, of which that owned by the

plaintiffs was a part, with resulting damage. In that year, the bed of the stream became clogged, and, to secure a more rapid flow, and thus prevent the accumulation of debris, the creek was narrowed and deepened, the banks being protected by cribbing. Notwithstanding the change made, two floods occurred in March of 1920, causing the water to cover the adjoining lots, including plaintiffs', and deposit coal dirt thereon.

This action was brought to recover for the loss sustained. At the trial, the right to damages for any injury resulting from a change in the lines of the creek was upheld, and a verdict for $2,514 was rendered. Judgment entered for the amount named is not contested by the defendant, and the right to compensation on this account is admitted. The legal question involved as to the item of claim allowed for had previously been passed upon by the Superior Court, and the right of a plaintiff, owning adjoining property and similarly situated, to recover for such loss determined: Miskel v. Lehigh Valley Coal Co., 85 Pa. Superior Ct. 357. In that case a release of damages for injury from coal deposits, as here, was offered in evidence, but held to be ineffective to relieve from responsibility insofar as the injury arose from the alteration of the banks of the stream. When the offer of a discharge from liability, given by the predecessors in title of the present claimants, was made in this proceeding, it was admitted as a defense to all claims for matters provided for therein, but not as exempting from loss from the above mentioned cause. Plaintiffs insist this paper was not binding upon them as to any part of their demand, and now appeal from the ruling of the court below in receiving it, and in charging the jury as to its effect as a partial defense to the total claim presented, and for which suit was brought.

In 1894 the Brush property was owned by one Artzema and his wife, who executed a release to defendant, and other upper riparian owners, in which was recited the fact that collieries had been and were to be erected

along Shamokin Creek to the east, and that, as a result
of these operations, "waste matters would be necessarily
deposited along the stream, and were liable to be washed
down by the waters," with resulting damage to the land
below.  To relieve from liability for the injury which
would probably occur from time to time, the owners
granted and conveyed to the defendant, its successors
and assigns, for a valuable consideration, "the right to
deposit and discharge into Shamokin Creek and its trib-
utaries, mine water, culm, coal dirt, slate and refuse
materials generally, from any collieries now or hereafter
owned," and the grantees were released and discharged
"from all suits, claims, demands and damages whatso-
ever arising out of the use heretofore of the collieries and
works connected therewith aforesaid, and the future
maintenance and operation of the same, and for, upon,
or by reason of any such deposits or discharge of mine
water, culm, dirt, slate or refuse matter generally, that
is now or has been at any time heretofore, or shall here-
after be discharged and deposited in said stream, or on
the said lands."  This conveyance was a matter of rec-
ord when the present plaintiffs purchased their land on
October 3, 1904.

It is first contended that this grant is void since it is
in effect a contract authorizing the performance of an
act prohibited by statute, and attention is called to the
Act of Congress (March 3, 1899, 10 U. S. Stat. An., sec-
tion 9918) which makes it unlawful to deposit into a
navigable stream, or a tributary thereof, refuse matter,
"or cause, suffer, or procure to be deposited material of
any kind in any place on the bank of any navigable
water, or on the bank of any tributary of navigable wa-
ter, where the same shall be liable to be washed into
such navigable water, either by ordinary or high tides,
or by storms or floods, or otherwise, where navigation
shall or may be impeded or obstructed."  This legisla-
tion is claimed to be applicable since the Susquehanna
River has been declared to be navigable by statute, and

the creek is tributary to it, but whether the former is navigable in fact at the point in question must nevertheless be established by proof, and is not a matter of which the courts ordinarily take judicial notice: U. S. v. Rio Grande Irrigation Co., 174 U. S. 690; Baker v. Lewis, 33 Pa. 301; Brewer-Elliott Oil & Gas Co. v. U. S., 270 Fed. 100; North American Dredging Co. v. Mintzer, 245 Fed. 297; 29 Cyc. 393.

The purpose of the legislation referred to was to prevent actual interference with navigation, and the record is barren of any evidence to show this to be the result of the coal dirt which found its way from the washery of the colliery into Shamokin Creek. In construing the federal act mentioned, it has been held: "If the material is deposited on the banks of a stream, the offense is not complete until it is washed into the river and obstructs navigation": Myrtle Point Trans. Co. v. Port of Coquille River, 86 Or. 311, 168 Pac. 40. There was no evidence before the court in this case which would have justified a declaration that the grant was in contravention of the Act of Congress, and therefore void. All plaintiffs showed was the operation of a washery, and that, as a result, dirt reached the bed of a stream, which ultimately entered into a river. Whether the latter was navigable at the place of entrance, within the meaning of the federal legislation, was not shown, nor did it appear that navigation was obstructed.

It is further objected that the release authorizes the commission of acts creating nuisances, harmful not only to the plaintiffs, but also to the public at large, and therefore void. It is true that the unauthorized pollution of streams is wrongful and may give rise to an action in trespass by one injured, or be restrained under proper circumstances (Keppel v. Lehigh Coal & Nav. Co., 200 Pa. 649), but the right to mine and prepare coal for market is not a nuisance in itself. The public at large may be injuriously affected by the operation of a colliery, in which case the State may have the right to in-

terfere (P. R. R. Co. v. Sagamore Coal Co., 281 Pa. 233),
as has the attorney general of the United States, where
navigation is obstructed by such conduct, as provided
by the Act of Congress before referred to. But the right
of the individual is to secure protection or redress be-
cause of the special injury which he sustains: Hughes
v. Heiser, 1 Binney 463. And there is no reason why he
cannot surrender his individual claim, or grant the right
to do an act which otherwise would constitute a tres-
pass as to him, if he so desires.

The validity of a grant such as here appears was rec-
ognized in Gallagher v. Kemmerer, 144 Pa. 509, though
the release then offered did not accrue to the benefit of
defendant, because the grant had been made to an upper
riparian owner, and the injury was inflicted in part by
the former. Indeed, the power to pollute waters as
against the individual may be acquired not only by pur-
chase, as here, but by prescription: McCallum v. Ger-
mantown Water Co., 54 Pa. 40; M'Kellip v. M'Ilhenny,
4 Watts 317; Thatcher v. Baker, 109 Pa. 22. "A right
to maintain a private nuisance may rest in a license
from the individual affected by the licensee's offensive
conduct. And, in an action seeking redress for such a
nuisance, if the defendant can show an authorization
from the plaintiff he thereby completely discharges him-
self from liability": 20 R. C. L. 503. The release of the
right to make future claim for injury was a covenant to
forbear to sue (3 Williston on Contracts 3141), and
public policy is ordinarily not concerned with the op-
tion which a man has to bring an action for damages
or forbear to do so: 13 C. J. 458.

In the present case there was not a mere revocable
license to do the acts complained of, but the grant of an
easement or estate in the land, which was binding on
plaintiffs' grantees, though the words "heirs and as-
signs" do not appear in the release after the names of
the grantors: Kellert v. Rochester C. & I. Co., 226 Pa.
27. The covenant was not personal, but ran with the

land (Landell v. Hamilton, 175 Pa. 327; Manderbach v. Bethany Orphans' Home, 109 Pa. 231; DeSanno v. Earle, 273 Pa. 265), and it is not material, although urged so to be by appellant, that the property of defendant was not contiguous to that of the releasor: Anania v. Serenta, 275 Pa. 474. "If the owner of property has charged it with a servitude as to the matter complained of, a subsequent grantee cannot recover damages therefor": 29 Cyc. 1260.

The owners of the land here involved agreed, for a valuable consideration, to refrain from making claim for any losses due to the washing of coal dirt from defendant's colliery by the flow of the creek. "Knowledge of the injuries which may develop in the future from an accident is not necessary to support an intention to release all liability for the result of such accident, prospective as well as present": 23 R. C. L. 400. A release will cover all matters which it can fairly be said were within the contemplation of the parties (Robeson v. Schuylkill Nav. Co., 3 Grant 186; Kempt v. P. R. R. Co., 156 Pa. 430; Updegrove v. R. R. Co., 132 Pa. 540; Hoffeditz v. Ry. Co., 129 Pa. 264), though the actual construction be made thereafter (Davis v. R. R. Co., 26 Pa. Superior Ct. 364), but will not discharge from responsibility for subsequent negligent acts which could not have been foreseen: Brown v. Ry. Co., 183 Pa. 38; McMinn v. Ry. Co., 147 Pa. 5.

It is also argued that the grant in question was an effort to limit liability for negligence, which is ineffective on the ground of public policy. In the case of common carriers of passengers or freight, this rule has been applied (Wright v. Adams Express Co., 230 Pa. 635; Eckert v. P. R. R. Co., 211 Pa. 267; Ensign v. Union Transfer Co., 88 Pa. Superior Ct. 26), but even releases from negligent acts by such defendants have been sustained, where not affecting the ordinary duties which they hold themselves out to perform. So, a discharge from liability, which may arise from the negligent set-

ting on fire of buildings constructed within the right-of-way of a railroad, has been held to constitute a good defense when loss occurs (Hartford Fire Ins. Co. v. R. R. Co., 175 U. S. 91; Checkley v. Illinois Central R. R. Co., 257 Ill. 491, 100 N. E. 942; Griswold v. Illinois Central R. R. Co., 90 Iowa 265, 57 N. W. 843; 11 R. C. L. 978), in the absence of a statute to the contrary: Ætna Ins. Co. v. R. R. Co., 180 N. W. 649. We are not, however, now concerned with a common carrier, but with a grant to an upper riparian owner.

The release before us exempted the defendant coal company from suit for injury from refuse "necessarily" discharged into the stream, and there was no proof at the trial that there was any negligence in the operation of the colliery. Plaintiffs' predecessors in title were paid in advance for the special injury arising from deposits of refuse evidently in expectation when the contract was signed, and they bought with full notice of the right of the coal company, and doubtless considered the outstanding charge when they agreed upon the purchase price. The court below properly admitted the release in evidence for the limited purpose offered, and instructed the jury as to its legal effect, permitting a recovery for the elements of injury not comprehended therein. It follows the assignments of error must be overruled.

The judgment is affirmed.