## Miskel *v.* Lehigh Valley Coal Company, Appellant.

*Real estate—Riparian owners—Dumping of refuse—Release—
Effect of action by husband and wife.*

A release by a lower riparian owner to a coal company from all
damages resulting from the discharge of refuse, etc., into a creek,
does not operate as a release for damages caused by the narrow-
ing of the stream by the coal company.

In such action it was not error to permit the husband and wife to
join as parties plaintiff, where the claim was for injuries to the
personal property of both parties and to the real estate of the wife.

Argued March 12, 1925.   Appeals, Nos. 3 and 4, Oct.
T., 1925, by defendant, from judgment of C. P. Northum-
berland Co., Sept. T., 1921, No. 450, in the case of Peter
Miskel and Alexandra Miskel v. The Lehigh Valley Coal
Company.   Before PORTER, HENDERSON, TREXLER, KEL-
LER, LINN and GAWTHROP, JJ.   Affirmed.

Trespass to recover damages for injuries to real estate
and personal property.   Before LLOYD, J.

· The facts are stated in the opinion of the Superior
Court.

Verdict in favor of plaintiffs, Peter Miskel and Alex-
andra Miskel, for $450 and verdict in favor of plaintiff,
Alexandra Miskel, for $2,000, and judgment thereon.
Defendant appealed.

*Errors assigned* were various rulings on evidence, the
charge of the court, answers to points and refusal of
defendant's motion for judgment non obstante veredicto.

*Voris Auten,* and with him *Edward J. Flynn,* for ap-
· pellant.—The defendant was protected by the release of
the plaintiffs' predecessor: Pennsylvania R. R. Co. v.
Friday, 4 Pennypacker 158; Updegrove v. Penna. Sch.
V. R. Co., 132 Pa. 540; Davis v. R. R. Co., 26 Pa. Supe-
rior Ct. 364; Kemp v. R. R. Co., 156 Pa. 441.

A husband and wife cannot bring a joint action for damages. Each must bring a separate action for the injury each has sustained: Fero v. Contreaso, 13 D. R. 394; Ebersoll v. Krug, 3 Binney 554; Curry v. Philips, 14 C. C. Rep. 479; Rineer v. Oatman, 14 Lanc. Rev. 201.

*G. H. Gerber,* and with him *A. D. Knittle* and *Joseph Hollister,* for appellees, cited: Brown v. Ry. Co., 183 Pa. 38; McMinn v. Ry. Co., 147 Pa. 5; Phœnix Pot Works v. Pittsburgh, etc., Ry. Co., 139 Pa. 284.

OPINION BY GAWTHROP, J., April 28, 1925:

This is an action of trespass brought jointly by a husband and wife for injuries resulting to the wife's real estate and to personal property thereon owned by both. The real estate consisted of two lots having a total frontage of fifty feet and a depth of one hundred and fifty feet located in the Borough of Mount Carmel, Northumberland County. These lots formed a part of the lowlands adjoining Shamokin Creek and extending in an eastwardly and westwardly direction parallel to it and at a distance of about one hundred and twenty-five feet northwardly therefrom—there being a street and three other lots between these premises and the creek. There was located on the western end of the lots a frame dwelling house containing a basement in which the plaintiffs since 1906 conducted a store. In July, 1919, and on March 5 and 12, 1920, during rainy periods, the Shamokin Creek overflowed its banks, flooded the premises and caused damage thereto and to the personal property thereon. Damages to the realty were also sustained subsequent to these floods by the overflowing of the creek.

The defendant is the owner or operator of a colliery situated along Shamokin Creek about a mile above these lots. The plaintiffs' statement alleged that in the operation of its colliery the defendant discharged water charged with coal dirt, sulphur, muck and refuse ma-

terial from washing coal, into the Shamokin Creek, thereby filling the channel with deposits to such an extent that it overflowed its banks during periods of high water; that the defendant by the construction of a log cribbing reduced the width of the channel of the creek passing through the Borough of Mount Carmel, from about twenty or thirty feet to a width of ten or twelve feet, thereby reducing the carrying capacity of the channel to such an extent that slight increases in the volume of the water caused the creek to overflow its banks; that the cribbing was negligently constructed and not properly maintained, in that portions of it were washed out, the logs thereof being carried down the stream to a bridge where they jammed, impeding the flow of the water and obstructing the passage of refuse so that the creek overflowed its banks and that such overflows resulted in the injury complained of. Damages were claimed to the date of the trial. The defendant admitted that it cast the deposit of coal dirt and other refuse into the creek and that it constructed the cribbing. It contended, however, that it used care in the operation of its colliery, in the construction and maintenance of the cribbing and in its endeavor to keep the channel clean; that the damages were caused by extraordinary floods; that there was a misjoinder of the plaintiffs; that it was not answerable in damages for the reason that a predecessor in title of the plaintiff, Alexandria Miskel, had executed a release covering the damages in question. The trial resulted in a verdict in favor of both of the plaintiffs for $450 for damages to personal property and a verdict in favor of the wife for $2,000, damages to the real estate. Motions for judgment n. o. v. and for a new trial were overruled and judgments were entered upon the respective verdicts.

Appellant filed sixteen assignments of error, by which it contends that: 1, The release offered in evidence is a bar to the present action; 2, the floods which caused the damage were so extraordinary that the defendant

360 MISKEL *v.* LEHIGH VALLEY COAL CO., Appel.

was not liable for injury caused thereby; 3, the court erred in rejecting testimony; 4, there was a misjoinder of plaintiffs; 5, there was error in the charge as to damages.

1. The release upon which the appellant relies was in the form of an agreement between Minerva Tucker, a predecessor in title of Alexandria Miskel, one of the plaintiffs, and the Lehigh Valley Coal Company, defendant, and others. It was duly recorded March 7, 1894. In 1906, the plaintiffs purchased the two lots and on October 23, 1917, Alexandria Miskel became the owner thereof. By the release Minerva Tucker, for a consideration of $165, granted, bargained, sold, released and confirmed to the defendant and the other parties of the second part, their successors and assigns, the right to deposit and discharge into Shamokin Creek and its tributaries mine water, culm, coal dirt, slate and refuse matter generally from any collieries then and thereafter owned, leased or operated by the parties of the second part, or either of them, along Shamokin Creek, or any tributaries thereof, with leave to deposit and discharge upon the lands of the party of the first part such mine water, culm, dirt, slate and refuse matter generally as should at any time be carried and deposited there by the stream, or its tributaries, and remised, released, quit-claimed and discharged the parties of the second part, their successors and assigns, of and from all suits, claims and demands arising by reason of such deposit or discharge of refuse matter in the past or in the future. The learned trial judge construed this release to include all damages sustained by the plaintiffs by reason of the discharge by the defendant of coal dirt and other refuse matter directly into the channel of the creek or by the defendant's maintaining upon its premises banks of coal dirt and other refuse, so that the same might be carried into the channel of the creek, and limited a recovery to such damages as were caused by the defendant's constructing and maintaining the cribbing and the

consequent narrowing of the channel. The argument of the able counsel for appellant is that in order to safeguard the adjoining property owners from damage the defendant conceived the idea that by narrowing the stream by means of the cribbing, the flow of the water therein would be quickened, the overflow thereof would be avoided and damage to property along the creek would be prevented; that the defendant's right to deposit mine water and culm into the creek carried with it the right to take all necessary precaution to keep the stream open and to see that the sediment deposited was carried away; that the putting in of the cribbing was but a reasonable exercise of the right to deposit culm or other refuse into the creek. The argument is not sound. Although the purpose of putting in the cribbing was that stated by appellant's counsel, we are of opinion that that action was not covered by the terms of the release, and that the release does not protect the defendant against damages resulting from that action. We concur with the following statement of the court below: "The narrowing of the creek channel by the defendant, approximately a mile below its operation, was neither necessary nor incidental to the use of its colliery. And there was nothing in the release expressly granting such right nor conferring immunity for damages caused thereby. Neither can it be said to have been within the contemplation of the parties. For, when the release was executed, the creek channel, having a width of twenty to thirty feet and, it may be fairly inferred from the testimony, a depth of four or five feet, was amply sufficient to vent the water of ordinary floods in the water shed. Moreover, the work of the narrowing of the channel postdated the release by more than twenty-two years......We can discover no process of reasoning whereby this release can be made to include damages caused by negligence in the construction and maintenance of the cribbing. If operative at all—and counsel for plaintiffs most strenuously insist that it is not—it could afford no higher pro-

tection to the defendant than was accorded it at the trial. It did not bar plaintiffs' right of recovery on the grounds of defendant's negligence in the construction of the cribbing."

2. It is contended that the court should have declared as a matter of law that the injuries complained of were caused solely by extraordinary floods, which amounted to an act of God. It would serve no useful purpose to refer to the evidence on this subject. We have read it and are satisfied that the questions, whether the floods were extraordinary and whether they would have produced the injuries independently of the conditions resulting from the cribbing, were for the jury and were submitted substantially in accordance with the law as announced in Karchner v. Penna. R. R. Co., 218 Pa. 309.

3. The ninth assignment of error complains of the refusal of the trial judge to permit counsel for the defendant to ask plaintiffs' witness, who testified to the taking of the photographs of one of the floods, whether he did not take the picture in question because it represented an extraordinary condition at the time it was taken. The question was objected to as not proper cross-examination and an attempt to introduce the defendant's case. The fifteenth assignment of error complains of the sustaining of the plaintiffs' objection to the following question propounded by defendant's counsel to one of their witnesses: "If you know, state whether before this cribbing was put in, any of the residents or property owners in this Lawn 4 applied to you to have the cribbing put in?" The ruling of the court in each instance was so clearly right and the complaints are so void of merit that we refrain from further comment.

4. As before stated, the action was joint for injuries to the wife's real estate and to personal property owned by the husband and the wife. Appellant urges that there was a misjoinder of plaintiffs having separate interests, and that as the point was properly raised at various stages of the trial, the judgment must be re-

versed on that ground. There can be no doubt that the wife might have brought her separate action of trespass for the injury to her real estate and that she and her husband might have brought an action for the damage to the personal property belonging to both. The question here is whether they had the right to join and in one action sue for the injuries to the wife's real estate and the personal property of both. Of course, separate actions should be required when full and exact justice cannot be done in one. Where, however, as in this case, the damages to both plaintiffs arose out of the same tort, at the same time, the same place and under the same circumstances and the evidence to establish liability is the same, and the jury were instructed to make and did make a separate assessment of the damages to the realty and to the personalty, there would seem to be no valid reason for reversing the judgment and remanding the cause with a direction that the parties redress their grievances by separate suits. While we find no decisions in the appellate courts in this State which directly approve a joinder such as is now before us, the case of McIntire v. Coal Co., 118 Pa. 108, is somewhat analogous. That was an action of trespass by a life tenant and the remainderman, in which they sought to recover against the defendant for the negligent mining of coal. The court below sustained a demurrer on the ground that there was a misjoinder of parties. In reversing, Mr. Justice PAXSON, speaking for the Supreme Court, observed that he could not see how the joinder could possibly injure the defendant; that a recovery in such a suit would be a bar to any subsequent action by either for the same cause; that the defendant would have to incur the risk of having to pay more money with two actions than with one, besides additional costs; that the only inconvenience in the case would be the difficulty of apportioning the damages in case of a recovery, between the life tenant and the remainderman, but that this was a difficulty with which the defendant had no concern. That reason-

ing applies here and the defendant is protected from a subsequent suit.   We are satisfied that the plaintiffs gain no advantage from their recovery in a joint action. We agree with the learned trial judge that justice was administered as fully and effectively as if separate trials were had; that "reason and due regard for economy and dispatch in the trial of cases call for a consolidation of trials when the same may be had without advantage to the one or prejudice and harm to the other."   The law abhors circuity and multiplicity of actions.   This case was well tried and we do not feel constrained to reverse on the point here made.

5.  The last contention of appellant is that raised by the sixteenth assignment of error, which complains that the court did not limit the recovery of the plaintiffs to such damage as was occasioned exclusively by the construction of the cribbing, over, above and beyond what damage would have been inflicted by the introduction of culm and refuse into the stream.   Counsel did not address themselves to this point in their brief, but it was discussed at the oral argument.   We seriously doubt whether the assignment which raises this question is good, because we find no exception to that part of the charge which refers to the measure of damages.   We have examined the question, however, and find that the learned trial judge squarely presented to the jury the question whether the cribbing was the proximate cause of the damage, and the liability of the defendant was limited to such damage as was caused by its negligence in the construction and maintenance of the cribbing and the consequent narrowing of the channel.   There is no merit in the question raised by this assignment.

All of the assignments of error are overruled and the judgment is affirmed.