## Calkins et al. v. Bradford County

152

*W. G. Schrier*, for appellant.
*H. K. Mitchell*, contra.

CULVER, P. J., February 4, 1935.—While the amount involved in this case is small, the legal questions raised are important and far-reaching.

The original petitioners were Willis L. Calkins and George C. Calkins, executors and trustees of the estate of John Calkins, late of the Borough of Sylvania, Bradford County, Pa. The petition sets forth in substance that, in the year 1925, the State Highway Department of Pennsylvania, by its officers, agents and employes, as incident to the construction of a concrete highway through the Borough of Sylvania, in this county, constructed a culvert under the said concrete highway, and, for the purpose of carrying away waters (there having been no previous waterway at that point) entered upon lands belonging to the petitioners as trustees, etc., and dug, cut and opened a large ditch over, through and across said lands, thereby doing permanent injury and damages to the lands in question.

The original petition also sets forth that, at some time before 1925, the petitioners, acting under the powers conferred upon them by the will of the previous owner of the lands, entered into a contract to sell the lands in question to Bessie Calkins Shipman (now Dustman), who took possession thereof and was in possession thereof under said contract at the time of the opening of said ditch, as aforesaid, and so continued until September 25,

1933, when the said Bessie Calkins Dustman and Rand J. Dustman, her husband, executed and delivered to your petitioners a release of said contract, and surrendered and delivered up said contract to your petitioners for cancellation.

The petition closed with the following prayer: "Your petitioners respectfully request your honorable court to appoint viewers to ascertain and assess such damages sustained and to be sustained by your petitioners and other persons entitled thereto in the premises, in accordance with the acts of assembly in such cases made and provided, and as in duty bound, etc."

Acting upon this petition, the Court of Quarter Sessions of Bradford County appointed viewers, who discharged the duties of their appointment, and assessed the damages, and made report thereof, to court.

The County of Bradford, the defendant, appealed from the award of viewers to the Court of Common Pleas of Bradford County, and during the trial of the case counsel for plaintiffs moved to amend the record by adding the name of Bessie Shipman Dustman as plaintiff in the case. To this motion, defendant objected, the court overruled the objection and permitted the amendment, the case proceeded, and the jury found a verdict for plaintiffs in the sum of $125.

The motion for judgment in favor of the defendant n. o. v. is based upon the contention that Bessie Shipman Dustman, having been in possession of the lands in question by virtue of the contract mentioned in the original petition and in evidence in the trial of the case, was the owner of the lands, and therefore the one entitled to damages, and that the court erred in permitting the amendment adding her as a plaintiff after the case had passed the viewers and reached this court. Defendant alleges that the court was without authority to permit this amendment, and that the original petitioners could not recover damages alleged to have been sustained to the

lands in question, they having received no assignment from Bessie Shipman Dustman of the damages by her sustained, and the damages not being such a charge as would run with the land, and not, therefore, transferred to the original petitioners by the quitclaim release and surrender up of the contract by Bessie Shipman Dustman to them before these proceedings were instituted.

The second reason, which in our judgment is the more important one, is that the Act of April 29, 1925, P. L. 360, under which damages in this case are claimed, is unconstitutional, for the reason that prior to that act no liability had existed on the part of any municipality for damages occasioned by reason of the State Highway Department's entering upon private property and opening and maintaining drainage channels, and for the further reason that no previous legislation had placed a liability upon a county for any damages incident to the construction of a State highway through a borough; and that therefore, the title of the act is deficient, as it gives no notice that it imposes liability for damages upon the several counties of the State. We have examined this question with care, and, after a most careful consideration, we are of opinion that the position taken by the defendant county is correct, and that the act under which liability is claimed is unconstitutional and invalid insofar as it places upon the county liability for damages for the State Highway Department's entering upon private lands, opening and maintaining drainage channels, ditches, etc.

Counsel for defendant contends in his brief and at the oral argument that neither the Act of May 31, 1911, P. L. 468, generally known as the "Sproul Act", originally creating the State highway Department and defining the various highways connecting county seats of the State, taken over by the State, to be constructed and maintained by it, nor any of its various amendments and supplements gave notice in their title that liability for

damages was imposed upon the State or any municipal division thereof, and argued that inasmuch as this act has been in force for nearly a quarter of a century and no question as to its constitutionality has ever been raised, it establishes a precedent sustaining the Act of 1925, which we are now considering.

We think this contention incorrect. The title to the Sproul Act, in our judgment, clearly gives notice of the liability of the Commonwealth for the expenses and the damages accruing in the construction and maintenance of State highways created and provided for in said act. The title to that act is broad and comprehensive. It reads, in part, as follows:

". . . providing for the improvement, maintenance and repair of said State Highways solely at the expense of the Commonwealth, and relieving the several townships or counties from any further obligation and expense to improve or maintain the same, and relieving said townships or counties of authority over same; requiring boroughs and incorporated towns to maintain certain State Highways wholly and in part; . . . conferring authority on the State Highway Commissioner; providing for the payment of damages in taking of property, or otherwise, in the improvement thereof; . . . providing aid by the State to counties and townships desiring the same in the improvement of township or county roads; defining highways and State-aid highways; providing method of application for State aid in the improvement, maintenance and repair of township or county roads and prescribing the contents of township, county, borough, or incorporated town petitions; providing for percentage of cost of improvement or repairs to be paid by State, county, township, borough, or incorporated town, and requiring contracts by counties, townships, boroughs, and incorporated towns with Commonwealth governing same".

This original State highway act does, therefore, by its

title, give full notice to the Commonwealth, counties, townships, boroughs, and incorporated towns, of the liability imposed upon them by the act, and each of the succeeding amendments and supplements to this act, of necessity, relate back to this original title.

As we interpret the Act of 1911, it did not include or take over as State highways any streets in any of the boroughs of the Commonwealth. Section 10 provides: "Anything herein contained, or any apportionment of the State into highway districts, shall not be construed as including or in any manner interfering with the roads, streets, and highways in any of the cities, boroughs, or incorporated towns of the Commonwealth".

By a proviso in the same section 10, the State Highway Commissioner was authorized, where certain conditions existed by which an unimproved section of road in any borough constituted a part of one of the State highways provided for in the act, to improve the same by and with the consent of the borough, or its council, the improvement or construction to be at the expense of the Commonwealth, but the maintenance to be borne jointly by the Commonwealth and the borough in the proportion of half and half, which percentages were changed by subsequent amendments.

This original act was repeatedly amended, and supplemental legislation added to it, but in none of the amendments or supplements was any liability placed upon a county for construction, maintenance, repair, or for damages, occasioned in the construction, maintenance or repair of a purely State highway constructed solely by and at the expense of the State Highway Department, until the passage of the Act of July 18, 1917, P. L. 1040, which provided in substance that before the State Highway Commissioner should, in any county having a population of less than 800,000 inhabitants, undertake the construction, reconstruction, or improvement of any State highway on the plan of the State highways, wherein a change

of existing lines and location was necessary, and from which damages were likely to result to an abutting property, he should notify the county commissioners, etc., and placing liability for such damages upon the county in which the road was located. The title to this act gave full notice of the liability which it was placing upon the counties, as its concluding clause is: "and providing for the payment of such damages by such counties."

This last-mentioned act was expressly repealed by section 3 of the Act of April 6, 1921, P. L. 107, which was an amendment to the original Sproul Act, and the title to which gives clear and express notice that liability for damages to property owners is placed upon counties. The Act of 1921 amended only sections 8 and 16 of the Sproul Act, and left section 10 as originally enacted. As we view this last act, it applies to such State highways as are under the exclusive jurisdiction of the State Highway Department, and built solely and exclusively by that department, and does not embrace sections of borough streets improved by the State Highway Department pursuant to the laws authorizing it to do so with the consent of the boroughs. It therefore appears to us that, exclusive of the Act of 1925, when the improvement was made in the Borough of Sylvania there was no liability upon the county for damages occasioned in the construction or reconstruction of a State highway in the Borough of Sylvania, for lands taken by widening or changing the location of the road itself; and certainly, prior to the Act of 1925, no liability existed upon the part of any municipality for damages occasioned by the State Highway Department's entering upon private property and cutting drainage ditches, etc. Indeed it is questionable whether, prior to that act, there was any legislation authorizing the State Highway Department to enter upon private properties and cut ditches, or in anywise interfere with such private property, outside the maximum width of the right of way which it could take.

Section 10 of the Sproul Act was amended by the Act of May 18, 1923, P. L. 252, but the section as amended still contains the provision: "Anything herein contained, or any apportionment of the State into highway districts, shall not be construed as including or in any manner interfering with the roads, streets, and highways in any of the cities, boroughs, or incorporated towns of the commonwealth".

The amendment gives the State Highway Commissioner authority, without the consent of the borough or town council, to improve or reconstruct the unimproved sections of a street forming a part of a State highway, to such width as he may deem advisable, at the expense of the Commonwealth. Ten percent of the maintenance is to be paid by the borough, and the remainder by the State.

The general borough Act of May 14, 1915, P. L. 312, in our judgment, does not affect the question involved in this case, because section 2 of that act provides: "This Act does not include any provisions, and shall not be construed to repeal any acts, relating to . . . State roads, State-aid roads, and private roads."

The Act of July 6, 1917, P. L. 704, amending the borough Act of 1915, has, as we view it, no application to the construction by the State Highway Department of a State highway through a borough.

As previously observed, it is our opinion the general borough Act of 1915 has no application to this proceeding growing out of the construction of a State highway. If, however, that act is applicable to these proceedings, liability for damages is placed upon the borough and not upon the county. This is provided for in chapter VI, art. III, sec. 1, of the general borough Act of 1915.

The legislature by the Act of May 7, 1929, P. L. 1596, as we interpret the various acts, first placed liability upon counties to pay damages sustained by the construction of State highways within the boroughs of the State. Certainly this act has no application to the controversy in

question in this case, the alleged damages sued for having occurred in 1925, 4 years before its passage.

If we are right in our interpretation of the various statutes, it follows that prior to the Act of 1925, now under consideration, no liability had existed against a county for damages even in the construction or improvement of a purely State highway through a borough, and certainly no liability had existed against any municipality for damages caused by the State Highway Department's entering upon private property wholly beyond the maximum width which the State could take for a public highway in a borough and thereon cutting drainage ditches, etc.

The act now under consideration is a separate and independent piece of legislation. It is not an amendment of or supplement to any previous act, and if it stands, its title must meet the constitutional requirements.

Counsel for plaintiff has cited and relies upon Commonwealth, ex rel., v. Light, 35 Pa. Superior Ct. 366; Commonwealth, ex rel., v. Snyder, 279 Pa. 234; Hays v. Cumberland County, 5 Pa. Superior Ct. 159, and kindred cases. Unquestionably, it is the duty of courts to sustain legislation without regard to its opinion as to the necessity for, or wisdom of the act, and an act should never be declared void, as unconstitutional, unless it clearly fails to comply with the constitutional requirements. The principle announced in the cases cited by plaintiffs' counsel and as applicable to the question we are now considering is: "Where prior legislation imposes upon counties a duty or burden, a subsequent act upon such subject need not expressly state in its title that the burden of paying for the same is to be borne by the county": Commonwealth, ex rel., v. Light, 35 Pa. Superior Ct. 366.

With this we fully concur, but the difficulty in the instant case is that no prior liability for the damages contended for in this case had ever existed against a county or any other municipality, and as no previous legislation on the same subject had placed liability upon the county

to pay damages, there is nothing in the title to the act to put the county upon inquiry.

Hays v. Cumberland County, 5 Pa. Superior Ct. 159, questioned the liability of the county for costs incident to enforcing the act to suppress vagrancy, but all costs incurred in the enforcement of that act were pursuant to other legislation imposing duties on the several officers, fixing their fees for the services rendered, and placing liability for such fees upon the county. The question in that case was whether or not the provisions of the act were germane to the subjects mentioned in the title.

Had there been previous legislation fixing liability upon the county to respond in damages for entering upon private lands and cutting ditches, drains, etc., incident to the construction of State highways, it is possible the act in question could be sustained, but in the absence of all such legislation and liability, we are convinced that the title to the act in question is deficient.

In County Commissioners' Petition, 255 Pa. 88, the court said: "The legislature may not impose new burdens upon counties unless the intention so to do is clearly indicated in the title of the statute imposing the new burden."

In Bennett v. Sullivan County, 29 Pa. Superior Ct. 120, the court said:

"The title is only notice that the act provides for the payment of bounties on the destruction of certain animals. The subject was one with which counties had no necessary connection and with regard to which at that time they were not subject to any duty. Had the title indicated that it created and provided for the prosecution of a criminal offense, that would have been sufficient notice to a county that it might become liable for the costs of such prosecution, but that is not this case."

"The effect of this statute was to impose on the several counties of the state the duty to pay the amounts indicated to persons who killed within their respective boundaries any of the animals named, and this was, exclusively, the

subject of the act. Was this subject clearly expressed in the title? Did the title convey notice that any burden was being placed upon counties? There was prior to this legislation no law which imposed upon counties any duty or burden with regard to animals of this character, nor was there any law which imposed upon counties the general duty to pay such bounties as might be authorized by statute. No prior act or general rule of law existed which can be used to bolster up this legislation; if it stands it must stand alone."

"The title of this act was merely notice that a bounty was to come from some source, but it gave no indication whether it was to be paid by the state, the county, the township or the owner of the land where the animal was destroyed."

The title to the Act of April 29, 1925, P. L. 360, which we are now considering reads as follows: "Conferring on the Department of Highways power to enter upon private property, and open and maintain drainage channels along roads or highways constructed at the expense of the Department of Highways or under its supervision; and providing penalty for interference with such drains or ditches; and providing for the payment of damages."

Nothing appears in this title to indicate by whom the damages shall be paid, whether by the State, the county, the borough or any other municipality, and as no previous liability had existed upon the county for damages so occasioned, there was nothing in the title to put the county upon inquiry.

In Dailey v. Potter County, 203 Pa. 593, the Supreme Court said: "The Act of June 6, 1893, P. L. 328, entitled 'An act providing for the relief of needy, sick, injured, and, in case of death, burial, of indigent persons, whose legal place of settlement is unknown,' is defective in title and unconstitutional, inasmuch as the title gives no notice to counties in which almshouses are not main-

tained by the county funds, of the burdens imposed upon them by the act."

In Fedorowicz v. Brobst, 254 Pa. 338, the Supreme Court said:

"The title to the Act of June 12, 1913, P. L. 502, relating to the payment of certain sums to the families of persons imprisoned at hard labor does not disclose the legislative purpose to impose upon counties liability for payment to the families of such persons. So much of the act as provides that where the funds of the institution where such prisoners are confined are insufficient for such payments, they shall be charged to and paid by the county from which the defendant was committed, violates Article III, Section 3, of the Constitution of Pennsylvania and is void."

In Lycoming Fair Assn. v. Lycoming County, 65 Pa. Superior Ct. 307, the court said:

"The Act of June 18, 1915, P. L. 1035, entitled 'An Act for the encouragement of agriculture and the holding of agricultural exhibitions; providing State aid for certain agricultural associations, and regulating the payment thereof,' violates Sec. 3, Art. III, of the Constitution of Pennsylvania, inasmuch as the title is not clear and is misleading as to the liabilities imposed upon counties by Sections 6 and 7 of the act."

In Commonwealth v. Hoffman et al., 24 Dist. R. 1108, 1110, Judge Kunkel said: "As we have seen, there is no notice given in the title of the Act of Jan. 2, 1871, P. L. 1556, nor in the title or body of the Act of April 9, 1869, P. L. 771, of which the former purports to be a further supplement, that Dauphin County is to be compelled to defray the expense of building bridges on street crossing Paxton Creek within the limits of Harrisburg. The section containing this provision is, therefore, unconstitutional and void."

In Pierie v. Philadelphia, 139 Pa. 573, Chief Justice Paxson said:

". . . 'An act to perfect the records of deeds, mortgages, and other instruments in certain cases.' This is all very well as far as it goes, but what is there in the title to give notice that the cost of this 'perfecting' is thrown upon the county of Philadelphia, and the other counties of the state? . . . There is nothing in the title of said act to give notice or warning to the taxpayers of the different counties of the state that the recorder's fees given thereby were imposed upon them. The act is so plainly unconstitutional that we consider it our duty to declare it so in this case."

In Union County v. Northumberland County, 281 Pa. 62, the Supreme Court held: "The Act of July 9, 1901, P. L. 620, attempting to amend the Act of May 13, 1901, P. L. 191, is unconstitutional in so far as it purports to impose upon the Commonwealth one-half of the expense of reconstruction of bridges, inasmuch as no such purpose is disclosed in its title."

In In re Road in the Borough of Phœnixville, 109 Pa. 44, 50, Mr. Justice Sterrett said:

"In view of what has been said we think the Act in question is unconstitutional. While it perhaps conforms to the first clause of the amendment it undoubtedly offends against the second, in that the subject of legislation is not so clearly expressed in the title as to give any notice of the legislative purpose. That purpose, as we have seen, was to transfer the burden of street damages in the several boroughs of the county from the benefited property owners therein, and impose the same on the taxpayers of the county at large. No one reading the title of the Act would for a moment suppose that such was the legislative intention."

In Quinn v. Cumberland County, 162 Pa. 55, 59, Mr. Justice Green said: "Now, while it is probably competent for the legislature to enact such laws, it is their duty, and their constitutional obligation, to give notice in the title of such enactments, of their intention to im-

pose such liability upon the municipal organization which is to be affected, and if this duty is neglected, such legislation is contrary to the requirements of the constitution and therefore void."

To these authorities may be added scores of others to the same effect, and as our attention has been called to no other act of assembly placing liability upon counties for damages such as are contended for in this case, we believe it our duty to declare the act in question unconstitutional and invalid insofar as it attempts to place liability upon counties to respond for the damages contemplated by the act.

In Provident Life & Trust Co. v. Hammond, 230 Pa. 407, 414, the Supreme Court said:

"If, therefore, the title is defective it cannot be cured by the subsequent enactment of the bill into a law by its being passed by the legislature and approved by the governor. In passing upon the adequacy or sufficiency of the title it must be done regardless of the subsequent enactment of the bill into a law. We cannot look beyond the title and into the body of the bill to determine the validity of the legislation. The title must speak for itself and clearly declare the legislative purpose. The investigator has the right to rely solely on the title without scrutinizing the body of the bill for information as to the subject of the proposed legislation."

This brings us to a consideration of whether or not the record was properly amended by adding the name of Bessie Shipman Dustman. The original petition asking for the appointment of viewers, as previously stated, recited the fact that the lands involved were, prior to the construction of the ditches, drains, etc., sold on a land contract to Bessie Calkins Shipman (now Dustman), that she was in possession of the lands on that contract at the time the injuries were sustained, and that subsequent thereto, and prior to the presentation of the petition for viewers, she had reconveyed the lands to the

original owners, who were the original petitioners in this case. The legal title to the lands involved at the time the injuries were sustained was in the original petitioner; the equitable title to the lands at the time was in Bessie Calkins Shipman (now Dustman). In our judgment, the holders both of the legal title and of the equitable title were interested in the subject matter now under consideration, and inasmuch as the defendant was in no wise injured by adding the additional claimant as plaintiff, and considering the liberality of the law in permitting amendments, in order that the rights of all parties interested may be protected and circuitous litigation avoided, we believe the amendment was properly allowed.

In Gotschall v. J. Langdon & Co., 16 Pa. Superior Ct. 158, 164, which was an action for wrongfully mining coal under lands of the plaintiff, the legal title was in one Yerger, but the equitable title was in the plaintiff. In that case the Superior Court treated the record as having been amended by adding the name of Lewis Yerger, saying:

"Amending the record by adding to the name of the present plaintiff that of Lewis Yerger, as a coplaintiff, averts all danger of injury to the defendant. As the case was tried on its merits, and the evidence affected by the condition of the record was received on the trial, we see no reason for not treating the record as so amended. It has been done in many cases in the Supreme Court in order to prevent injustice and facilitate the administration of law".

In Schuylkill Navigation Co. v. Farr, 4 W. & S. 362, 374, the legal title to the land was in one Kunzi, and Farr had an equitable interest therein by virtue of an oral agreement. The court said: "If Farr had such an equitable interest as constituted an estate, there is no valid objection to his joining in an action to recover damages for an injury to the estate with the owner of the legal title."

It was held in McIntire et al. v. Westmoreland Coal Co., 118 Pa. 108, that a joint action by a life tenant and remainderman may be maintained to recover against a defendant for the negligent mining of coal.

In Miskel v. Lehigh Valley Coal Co., 85 Pa. Superior Ct. 357, it was held it is not error to permit a husband and wife to join as parties plaintiff where the claim is for injuries to the personal property of both parties and to the real estate of the wife.

It therefore appears to us that Bessie Shipman Dustman could and should have joined in the original petition, and that it was not too late to add her as a party plaintiff after the appeal was taken. Such action in no wise injured the defendant, and the defendant by such amendment is relieved from any other claim by her.

For the reasons above given we are of opinion that defendant's motion for judgment n. o. v. should be sustained.

### Order

And now, to wit, February 4, 1935, after due and careful consideration, defendant's rule for judgment n. o. v. is made absolute, and the prothonotary is directed upon payment of the jury fee to enter judgment for defendant. An exception is noted for plaintiffs and a bill sealed.

From Romeyn F. Culver, Towanda.